Frank BOLDUC, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–649C.

United States Court of Federal Claims.

July 25, 2006.

Stephen B. Hrones, Hrones, Garrity & Hedges, LLP, Boston, Massachusetts, for plaintiff.

J. Reid Prouty, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director, all of Washington, D.C., for defendant.

## OPINION AND ORDER

WOLSKI, Judge.

Plaintiff Frank Bolduc seeks money damages under 28 U.S.C. §§ 1495 and 2513, to compensate him for being unjustly convicted and imprisoned for eight years. The United States has moved for the case to be dismissed as untimely, arguing that Mr. Bolduc filed the complaint six days too late under the applicable six-year statute of limitations period imposed by 28 U.S.C. § 2501. For the reasons that follow, the government's motion to dismiss is GRANTED.

## I. BACKGROUND

In February, 1991, a federal jury found plaintiff and another individual guilty of bank robbery, attempted bank robbery, and two related firearms charges. Compl. ¶ 5; *see also Bolduc v. United States*, 402 F.3d 50, 53 (1st Cir.2005) ("*Bolduc II*"). On May 24, 1991, the United States District Court for the Eastern District of Wisconsin sentenced Mr. Bolduc to 580 months in prison. *Id.; see also Bolduc II*, 402 F.3d at 53 n. 2. Federal officials returned Mr. Bolduc to a Massachusetts state penitentiary so that he could resume serving a life sentence for second-degree murder—a sentence which had been reinstated by the parole board when Bolduc had been arrested in Massachusetts in 1989 for another crime. *Bolduc II*, 402 F.3d at 53. The following October, the convictions were affirmed on appeal. Compl. ¶ 6 (citing *United States v. Larkin*, 978 F.2d 964 (7th Cir. 1992)). Eight years after Mr. Bolduc was convicted and sentenced for the Wisconsin crimes, one of the individuals who actually committed the crimes confessed. *See Bolduc II*, 402 F.3d at 54. The district court vacated plaintiff's sentence on June 11, 1999. Compl. Ex. B. On October 7, 1999, the district court granted plaintiff's request for a certificate of innocence. Compl. Ex. C. Based on the certificate of innocence, and with the 1989 Massachusetts state criminal charges against Mr. Bolduc not prosecuted in the wake of the intervening federal conviction, the Massachusetts parole board decided to release Mr. Bolduc from prison in November, 1999. *Bolduc v. United States*, 265 F.Supp.2d 153, 163 (D.Mass.2003) ("*Bolduc I*").[1]

---

1. Although it is not relevant to the matter at hand, it appears that plaintiff's prison time may actually have been *reduced* because of the wrongful federal conviction. His parole had been revoked when he was arrested in 1989 for the robbery of an armored car in Chelmsford, Massachusetts. *Bolduc II*, 402 F.3d at 53. During this arrest, Mr. Bolduc allegedly attempted to shoot at least one police officer. *Bolduc I*, 265 F.Supp.2d at 167–68. Before he could be prosecuted in Massachusetts for these crimes, Mr. Bolduc was indicted by a federal grand jury in Milwaukee, Wisconsin, for the federal crimes he did not commit. Because of the federal conviction, the Massachusetts authorities dropped the charges relating to the robbery of the armored car, as the parole board determined that Mr.

On August 9, 2001, Mr. Bolduc sued the United States in the Massachusetts federal district court under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, for its failure to disclose exculpatory evidence in the course of the federal proceedings. He based these claims on the torts of malicious prosecution, false imprisonment, abuse of process, and negligent supervision, and added a *Bivens* claim against the FBI agent responsible for the non-disclosure.[2] *Bolduc II*, 402 F.3d at 54. Only the negligent supervision claim survived the government's motion to dismiss, and the other claims were not appealed. *See id.; see also Bolduc v. United States*, No. 01-CV–11376–PBS, 2002 WL 1760882 (D. Mass., July 30, 2002 Mem. & Order). After trial, on July 2, 2003, the district court entered judgment for the government on the remaining claim, and the First Circuit affirmed this judgment on March 23, 2005. *See Bolduc I*, 265 F.Supp.2d 153, *aff'd* 402 F.3d 50. On June 17, 2005, Mr. Bolduc filed the present action in our Court. Arguing that plaintiff's claim accrued on June 11, 1999, when the federal conviction was vacated, the government moved to dismiss the case as untimely—as the matter was filed more than six years later. After reviewing the parties' briefs, the Court requested supplemental briefing on the issue of whether the statute of limitations for filing a claim under 28 U.S.C. § 1495 may have been tolled by the operation of 28 U.S.C. § 1500.

## II. DISCUSSION

■ Before reaching the substance of the motion, the Court finds it necessary to consider the *label* placed on the motion by the government. The timeliness of Mr. Bolduc's complaint is challenged via a motion to dismiss—which appears appropriate, as the government has confined its argument to matters that are raised in the Complaint.[3] The

government has identified Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) as the basis for the motion. *See* Def.'s Mot. at 1, 6. This ground for dismissal is the "lack of jurisdiction over the subject matter." RCFC 12(b)(1); *see* Def.'s Mot. at 6. But even if the time bar restricting the exercise of this Court's jurisdiction over a claim is "jurisdictional in nature," *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed.Cir.2003), does this mean that the statute of limitations deprives our Court of *subject-matter* jurisdiction? The Court concludes that the best understanding of the relevant case law is that it does not, and that the government's motion is more properly considered under RCFC 12(b)(6), based on the "failure to state a claim upon which relief can be granted." *See* RCFC 12(b)(6); *see also Borough of Alpine v. U.S.*, 923 F.2d 170, 171–73 & n. 1 (Fed.Cir.1991) (affirming a dismissal for untimeliness as a failure to state a claim, instead of the lack of subject-matter jurisdiction argued and accepted below).

There is confusion in this area stemming, in part, from the rather loose way that the words "jurisdiction" and "jurisdictional" have been used by courts. This bad habit has been acknowledged by both the Federal Circuit and the Supreme Court. *See, e.g., Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed.Cir.1992) (" 'Jurisdiction' is a term that is one of the most slippery in the legal lexicon."); *Bray v. United States*, 785 F.2d 989, 992 (Fed.Cir.1986) ("Over the years, the term 'jurisdiction' has been batted about like a bird caught in a badminton game."); *Arbaugh v. Y & H Corp.*, —— U.S. ——, ——, 126 S.Ct. 1235, 1242, 163 L.Ed.2d 1097 (2006) ("This Court, no less than other courts, has sometimes been profligate in its use of the term ['jurisdictional']."); *Kontrick v. Ryan*, 540 U.S. 443, 454, 124 S.Ct. 906, 157

---

Bolduc's federal conviction was a sufficient basis to revoke his parole. *Bolduc II*, 402 F.3d at 53.

**2.** *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The *Bivens* claim was dismissed for lack of in personam jurisdiction over the individual agent. *See Bolduc II*, 402 F.3d at 54 & n. 3.

**3.** The district court order vacating Mr. Bolduc's federal conviction was attached to the Com-

plaint, *see* Compl. Ex. B, and thus may be considered by the Court without converting the motion to dismiss into a motion for summary judgment. *Frazier v. United States*, 67 Fed.Cl. 56, 59–60 (2005); *see also* RCFC 10(c) ("any written instrument which is an exhibit to a pleading is a part thereof for all purposes"); *Morris v. United States*, 33 Fed.Cl. 733, 745 n. 11 (1995).

L.Ed.2d 867 (2004) (Supreme Court admitting that it and other courts "have been less than meticulous in" use of term "jurisdictional" to describe time limitations); *Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Jurisdiction, it has been observed, is a word of many, too many, meanings.") (internal quotation marks and citation omitted). The confusion is also a vestige of the approach (since-abandoned) that the Supreme Court had previously taken regarding statutes of limitations, which were once treated differently depending on whether the defendant was the sovereign or a private party.

But ever since its 1990 opinion in *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court has been guided by its "recognition that limitations principles should generally apply to the Government 'in the same way that' they apply to private parties." *Franconia Assocs. v. United States*, 536 U.S. 129, 145, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (quoting *Irwin*, 498 U.S. at 95, 111 S.Ct. 453). And the Supreme Court has made it clear that a lack of subject-matter jurisdiction is quite different and distinct from the untimeliness of an action due to the running of the statute of limitations. *See Day v. McDonough*, —— U.S. ——, ——, 126 S.Ct. 1675, 1681, 164 L.Ed.2d 376 (2006) ("A statute of limitations defense ... is not 'jurisdictional,' hence courts are under no *obligation* to raise the time bar *sua sponte.*"); *United States Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76–77, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988) (explaining difference between "subject-matter jurisdiction" and "a limitations statute that would compel dismissal"). The former cannot be forfeited or waived. *See, e.g., Arbaugh*, 126 S.Ct. at 1244 (citing *United States v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). The statute of limi-

tations defense, on the other hand, may be waived or forfeited. *Day*, 126 S.Ct. at 1679 ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto ... And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense."); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that Title VII's statute of limitations was "not a jurisdictional prerequisite ... but a requirement subject to waiver as well as tolling"). And as was discussed above, the Supreme Court no longer condones special rules for applying statutes of limitations in cases brought against the government, explaining:

> Once Congress waives sovereign immunity, we observed, judicial application of a time prescription to suits against the Government, *in the same way the prescription is applicable to private suits*, "amounts to little, if any, broadening of the congressional waiver."

*Scarborough v. Principi*, 541 U.S. 401, 421, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting *Irwin*, 498 U.S. at 95, 111 S.Ct. 453) (emphasis added).[4]

To be sure, there had been opinions of the Supreme Court that described a dismissal due to the running of the statute of limitations as owing to a lack of jurisdiction. *See, e.g., United States v. Dalm*, 494 U.S. 596, 609–10, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *Block v. North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 292, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Soriano v. United States*, 352 U.S. 270, 271, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). These opinions, though, pre-date *Irwin*, and never once describe the jurisdiction that is lacking to be of the "subject-matter" variety—they are examples, it seems, of the "profligate" or "less

---

4. The Court is aware of at least two post-*Irwin* Federal Circuit opinions which included dictum stating that the statute of limitations defense may not be waived. *See Hart v. United States*, 910 F.2d 815, 818–19 (Fed.Cir.1990); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376–77 (Fed.Cir.1998) (citing *Hart*, 910 F.2d at 818–19). Neither case involved the issue of waiver. In any event, such dictum is inconsistent with the Su-

preme Court's subsequent decisions emphasizing that the statutes of limitations are applied to the government the same way they apply to private parties, *see Franconia Assocs.*, 536 U.S. at 145, 122 S.Ct. 1993; *Scarborough*, 541 U.S. at 421, 124 S.Ct. 1856, and that the statute of limitations defense may be waived by a government. *See Day*, 126 S.Ct. at 1679, 1684 n. 11; *see also id.* at 1686 (Scalia, J., dissenting).

than meticulous" use of the term "jurisdiction." *Cf. Arbaugh,* 126 S.Ct. at 1242; *Kontrick,* 540 U.S. at 454, 124 S.Ct. 906. Moreover, in this line's progenitor, the Supreme Court explained its conclusion in language that evokes Rule 12(b)(6): "this Court can *enforce relief* against the sovereign only within the limits established by Congress." *Soriano,* 352 U.S. at 277, 77 S.Ct. 269 (emphasis added).

One line of Federal Circuit opinions, which traces back to a pre-*Irwin* source, had persisted in characterizing the statute of limitations for suits against the government as "jurisdictional," and even occasionally stated that subject-matter jurisdiction is therefore lacking when a suit is untimely filed. *See, e.g., Frazer v. United States,* 288 F.3d 1347, 1351, 1355 (Fed.Cir.2002); *Caguas Central Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed.Cir.2000); *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77, 1582 (Fed.Cir.1988); *Jones v. United States,* 801 F.2d 1334, 1335 (Fed.Cir. 1986). These cases do not consider the issue of whether the statute of limitations defense could more properly be considered as presenting a failure to state a claim upon which relief can be granted, as the jurisdictional characterization is taken for granted. Thus, the cases appear to fall in the category of "drive-by jurisdictional rulings," which, the Supreme Court has cautioned, should "have no precedential effect." *Steel Co.,* 523 U.S. at 91, 118 S.Ct. 1003. And their source explicitly describes "a situation in which a Tucker Act complaint, over which a court clearly *has* subject-matter jurisdiction must nonetheless be dismissed because the period during which the United States has consented to be sued had expired." *Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986).

On the other hand, the Federal Circuit has, on several occasions, expressly gone out of its way to emphasize that the running of the statute of limitations is properly a failure to state a claim upon which relief may be granted, and not a lack of subject-matter jurisdiction. *See Venture Coal Sales Co. v. United States,* 370 F.3d 1102, 1105 n. 2 (Fed. Cir.2004) (explaining that when a party "failed to make its claim within the required limitations period—that is not a question of subject matter jurisdiction of the court"); *Ariadne Fin. Services Pty. Ltd. v. United States,* 133 F.3d 874, 878 (Fed.Cir.1998) (determining that the "statutory language" of 28 U.S.C. § 2501 "confirms that the question of a time bar on [plaintiff's] claim does not affect the subject matter jurisdiction of the Court of Federal Claims," but instead may "bar its eligibility to invoke that jurisdiction"); *Borough of Alpine,* 923 F.2d at 171–72 & n. 1 (explaining that the dismissal of an untimely complaint should have been "for failure to state a claim on which relief may be granted," as our Court "has and will continue to have jurisdiction over the subject matter," but the failure to timely file meant plaintiff "was not entitled to have the Claims Court *exercise* its subject matter jurisdiction"). The Court adopts and follows the persuasive analysis of these two lines of cases by Chief Judge Damich in the recent opinion in *Grass Valley Terrace v. United States,* 69 Fed.Cl. 341, 345–48 (2005), and joins him in holding that the failure to meet the time limitations of 28 U.S.C. § 2501 "goes to the sufficiency of the claim asserted," *id.* at 347—and thus is an issue properly considered under RCFC 12(b)(6), not 12(b)(1).[5] Plaintiff here brings a claim against the United States for damages for unjust conviction and imprisonment, which is *certainly* within our subject-matter jurisdiction. *See* 28 U.S.C. § 1495. But if such claim is untimely, our Court is barred from acting upon it, and thus relief may not be granted.

It is, of course, left to Congress to decide whether to place certain claims beyond the subject-matter jurisdiction of a federal court, or instead merely to restrict the exercise of the court's jurisdiction over them. The statute giving our Court jurisdiction over claims

---

5. *See also L.E. Cooke Corp. v. United States,* 27 Fed.Cl. 753, 754–55 (1993) (holding that time-bar under section 2501 implicates a failure to state a claim, not a lack of subject-matter jurisdiction); *George F. Miller Farms, Ltd. v. United States,* 27 Fed.Cl. 672, 672 n. 1 (1993) (stating section 2501 time-bar "would not be jurisdictional") (citing *Spruill,* 978 F.2d at 686–89, and *Cooke Corp.,* 27 Fed.Cl. at 754–55).

for unjust conviction and imprisonment itself contains no time limitation. *See* 28 U.S.C. § 1495. If Congress so chose, it could have employed language to the effect that our Court shall have jurisdiction over such a claim "only if the claim first accrued no earlier than six years before the date the claim is filed." Instead, Congress decided to employ the general statute of limitations for claims in our Court, which expressly applies to claims that are *already within our subject-matter jurisdiction:* "Every claim *of which the United States Court of Federal Claims has jurisdiction* shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2000) (emphasis added). Just as Congress can use language demonstrating its intent that equitable tolling not be allowed for certain limitations periods, *see United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), it can specify that a bar on certain claims removes these claims from a court's subject-matter jurisdiction—thereby preventing the Executive branch from waiving or forfeiting the time bar defense, among other effects. It chose not to do so concerning the claim before the Court.

The label under which a dismissal motion is considered can be significant to the outcome of that motion—as plaintiffs have the burden of demonstrating subject-matter jurisdiction, *see Reynolds v. Army & Air Force Exchange Service,* 846 F.2d 746, 747–48 (Fed.Cir.1988), while the defendant "has the burden where a motion for failure to state a claim is filed." *Grass Valley Terr.,* 69 Fed. Cl. at 345 (citing *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002)). In this case, however, the facts upon which defendant bases its motion are contained in the Complaint and are beyond dispute, and the Court finds that these facts show beyond doubt that no set of other facts can exist to prove the timeliness of plaintiff's claim.

## A. When Did Plaintiff's Claim First Accrue?

■ Turning to the substance of defendant's motion, the government contends that Mr. Bolduc's claim accrued on June 11, 1999, the date of the district court's order vacating plaintiff's conviction. Def.'s Mot. at 4. Plaintiff argues that his claim did not accrue until the district court issued a certificate of innocence, in October, 1999.[6] Pl.'s Opp. at 1. If the government is correct, then Mr. Bolduc's case was filed six days after the statute of limitations period had expired.

A claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir.2003). Concerning a claim for damages due to unjust conviction and imprisonment, Congress has provided, in relevant part:

(a) Any person suing under section 1495 of this title must allege and prove that:

(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(b) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received.

28 U.S.C. § 2513 (2000).

Mister Bolduc asserts that section 2513 "unambiguously requires a certificate of in-

---

6. Plaintiff cites the October 13, 1999 date that an "Amended Certificate of Innocence" was issued as the relevant date. *See* Pl.'s Opp. at 1; *see also* Compl. Ex. C–4 (amended certificate). The district court initially issued Mr. Bolduc's certificate of innocence on October 7, 1999, *see* Compl. Ex

C–2, but apparently issued the amended certificate to correct an error in the case number printed on the initial certificate. Compare *id.* Ex. C–2 *with id.* Ex. C–4. It is immaterial to this decision whether the original certificate would have constituted sufficient proof in this matter.

nocence before a claim can be filed." Pl.'s Opp. at 1. But a careful reading of the statute, which "has always been strictly construed," *Vincin v. United States,* 199 Ct.Cl. 762, 766, 468 F.2d 930 (1972), reveals that this is not the case. Subsection (a) identifies the elements of an unjust conviction and imprisonment claim, which must be alleged and proven. As pertain to Mr. Bolduc's case, these are that his conviction was set aside on the ground that he was not guilty; that this is apparent from the record or certificate of the court setting the conviction aside; that he did not commit the acts charged in the conviction; and that he was not responsible for his prosecution due to neglect or misconduct. 28 U.S.C. § 2513(a). Subsection (b), upon which Mr. Bolduc's argument rests, deals not with the elements of the action but instead the only acceptable means of proof of these elements. *See* 28 U.S.C. § 2513(b). While subsection (a) requires the allegation that the setting aside of his conviction on the ground that he is not guilty "appears from the record or certificate of the court setting aside or reversing such conviction," 28 U.S.C. § 2513(a)(1), Mr. Bolduc could have made this allegation upon the issuance of the district court's June 11, 1999 order. That order is without question a *record* of the court, and it specifies that Mr. Bolduc's conviction was vacated because another individual, with whom Mr. Bolduc did not have contact, verifiably confessed to the commission of crimes for which plaintiff was convicted. *See* Compl. Ex. B.

In contrast to the allegation that a conviction was set aside on the ground that the plaintiff was not guilty, the statute does not require that the other facts that need be proven—that plaintiff "did not commit any of the acts charged ... and he did not by misconduct or neglect cause or bring about his own prosecution," 28 U.S.C. § 2513(a)(2)—must be *alleged* to appear in a record or certificate of the court. *See* 28 U.S.C. § 2513(a). Nor is there anything about these elements that would require a plaintiff to wait for a court certificate to inform him of their existence—Mr. Bolduc possessed personal knowledge of his own acts, including whether misconduct or neglect counted among them. While these particular

facts need to be *proven* through a certificate of the district court, the statute does not require that they be alleged based on this proof. *Cf. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation,* 484 U.S. 49, 68, 108 S.Ct. 376, 98 L.Ed.2d 306 (Scalia, J., concurring) ("There is of course nothing unusual in the proposition that only an allegation is required to *commence* a lawsuit. Proof is never required, and could not practicably be required, at that stage."). Our Court has "jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned," 28 U.S.C. § 1495 (2000), and the allegations of such a claim do not require the prior issuance of a certificate of innocence.

The one opinion from our Court that is on point confirms this reading of the statute. In *Veltmann v. United States,* 39 Fed.Cl. 426 (1997), the Court held that a plaintiff's failure to have "submitted an executed certificate alleging the requisite facts" did not deprive the Court of subject-matter jurisdiction over the claim. *Id.* at 428. Even though this certificate had not yet been obtained by the plaintiff, his cause of action had already accrued—as plaintiff alleged he had been found not guilty after a new trial had been held, as appeared in a court order memorializing the second jury verdict. *See id.* at 427. Mister Bolduc attempts to distinguish this precedent, arguing that it was "an exceptional case" that employed "equitable power" to "overloo[k] the general rule in order to help the plaintiff." Pl.'s Opp. at 3–4. But the opinion makes not the slightest mention of any equitable principles or considerations, and no injury would have been done to that plaintiff's rights had the case been dismissed for want of subject-matter jurisdiction—Veltmann would have been free to file a new suit upon receipt of the certificate, if its existence was indeed the crucial determinant of his claim's accrual and our Court's jurisdiction.

In a sur-reply, Mr. Bolduc cites four additional precedents that he asserts stand for the proposition that a claim within our Court's jurisdiction, under sections 1495 and 2513, cannot be stated until a certificate of

innocence has been obtained.[7] *See* Pl.'s Reply to Reply at 1–2. But none of these cases concerned the connection between a certificate of innocence and our Court's jurisdiction over a claim for unjust conviction. In one case, an escapee from a mental hospital brought what appeared to the Court of Claims to be a claim based on the tort of false imprisonment. *Grayson v. United States,* 141 Ct.Cl. 866, 868 (1958). No claim within the court's jurisdiction was stated, as the plaintiff did not even allege a conviction. *See id.* at 867–69. In another case involving a *pro se* plaintiff, the Court of Claims on its own raised and rejected a section 1495 claim. *Vincin v. United States,* 199 Ct.Cl. 762, 766, 468 F.2d 930 (1972). There, the plaintiff's pardon from President Johnson did not state that it was based on his innocence, and thus "create[d] no cause of action" but was "an act of executive grace, no more." *Id.* at 766, 468 F.2d 930.

A third case, *Brown v. United States,* 42 Fed.Cl. 139 (1998), concerned the situation in which a plaintiff contended that a military appeals court had set aside his conviction, when "the express language of [its] determination establishes that neither a new trial nor rehearing was required or ordered." *Id.* at 142. As the Court explained, the appellate body "expressly affirmed the findings of fact in plaintiff's case and merely set aside the action on plaintiff's sentence for the consideration of clemency submissions." *Id.* The Court exercised jurisdiction over the matter and dismissed the cause of action for failing to state a claim upon which relief can be granted. *See id.* at 141–42. Although the absence of any certificate of innocence or pardon was discussed as preventing plaintiff from "demonstrat[ing] that his conviction has been reversed or set aside on the grounds of innocence," *id.* at 142, the plaintiff's utter

failure to identify any court record showing that his conviction was reversed or set aside was the reason an essential element was missing from his statement of a claim. In the fourth case cited by Mr. Bolduc, the plaintiff did not even allege that his federal conviction had been reversed or set aside. *See Salman v. United States,* 69 Fed.Cl. 36, 39 (2005). That plaintiff, a Mr. Salman, apparently sought to use our Court as the forum to vacate the guilty plea he had entered thirty-one years earlier. *Id.* at 37, 40. Although Mr. Salman, acting *pro se,* called his claim one for unjust conviction under section 1495, the Court concluded that what he sought to accomplish was not within our jurisdiction. *Id.* at 39–40.[8]

The Court concludes that, following *Veltmann,* Mr. Bolduc's claim for unjust conviction and imprisonment damages first accrued on June 11, 1999, when the district court issued the order setting aside his conviction on the ground that another man was guilty of the crimes for which plaintiff was convicted. Unless there exists a reason for tolling the statute of limitations, 28 U.S.C. § 2501 bars this Court from providing Mr. Bolduc the relief he seeks.

**B. Should the Statute of Limitations Period Be Equitably Tolled?**

█ In his opposition to the motion to dismiss, plaintiff raised—albeit in passing—the possibility that the statute of limitations period could be equitably tolled in this case. *See* Pl.'s Opp. at 3 n. 2. Beginning with the Supreme Court's decision in *Irwin,* it has been clearly established that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Irwin,* 498 U.S. at 95–96, 111 S.Ct. 453. That opinion explained that such equi-

---

7. Although no reason was provided by Mr. Bolduc's counsel explaining why a discussion of these opinions could not have been included in the opposition memorandum, the government did not oppose the motion to file the sur-reply. The Court granted the motion in light of the importance of the statute of limitations issue to Mr. Bolduc's claim.

8. Merely because a plaintiff calls his claim one falling within our jurisdiction does not make it

so, as "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim" may be proper "when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.,* 523 U.S. at 89, 118 S.Ct. 1003 (internal quotations and citation omitted).

table relief is granted "only sparingly," and described two situations that justify tolling: "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* at 96, 111 S.Ct. 453. The Supreme Court has more recently elaborated on this point, explaining that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citing *Irwin,* 498 U.S. at 96, 111 S.Ct. 453).

The Federal Circuit has recognized the applicability of equitable tolling to section 2501, applying the principle that a statute of limitations period is tolled when "under the circumstances plaintiff did not and could not have known of the facts upon which the claim is based." *Catawba Indian Tribe v. United States,* 982 F.2d 1564, 1572 (Fed.Cir.1993); *but see Martinez,* 333 F.3d at 1319 (recharacterizing this principle as "a construction of the term 'accrues'" and thus "distinct from the question whether equitable tolling is available"). In his footnote suggesting tolling, however, Mr. Bolduc failed to allege any facts that would, if proven, establish that tolling is warranted based on either a timely filing of a defective pleading, government misconduct that induced his late filing, or the inability to discover the relevant facts. All Mr. Bolduc argued was that "Plaintiff is a very special one who as an innocent man spent eight years in prison." Pl.'s Opp. at 3 n. 2.

Treating the government's motion to dismiss as coming under RCFC 12(b)(6), the Court accepts as true all factual allegations made by Mr. Bolduc and draws all reasonable inferences in a light most favorable to him.[9] *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). But no fact is alleged in the Complaint to support Mr. Bolduc's claim that equitable tolling is appropriate.

In its motion to dismiss the complaint, however, the government brought to the Court's attention that Mr. Bolduc had unsuccessfully litigated a case in the U.S. District Court for the District of Massachusetts, concerning claims that also relate to his vacated federal conviction. *See* Def.'s Mot. at 1–3. In the district court case, Mr. Bolduc sought the same relief of money damages that is the object of the instant lawsuit. *See Bolduc II,* 402 F.3d at 54. The district court litigation might, while pending, have prevented our Court from assuming jurisdiction over the claim that Mr. Bolduc ultimately filed here. *See* 28 U.S.C. § 1500; *see also, e.g., Keene Corp. v. United States,* 508 U.S. 200, 209, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (Fed.Cir.1994) (holding our Court may not take jurisdiction over a claim when the prospective plaintiff has pending in another court a lawsuit with a claim arising out of the same operative facts and seeking the same relief).[10] Taking into consideration that Mr. Bolduc, although currently represented by counsel, filed his complaint in our Court *pro se,* and the leniency that is normally extended to such pleadings, *see, e.g., Es-*

---

9. When based on the factual allegations contained in a complaint, a challenge to that complaint's timeliness may be made via a motion to dismiss for failure to state a claim. *See, e.g., Tregenza v. Great American Comm. Co.,* 12 F.3d 717, 718 (7th Cir.1993); *Guy v. Swift & Co.,* 612 F.2d 383, 385 (8th Cir.1980); *Omar ex rel. Cannon v. Lindsey,* 243 F.Supp.2d 1339 (M.D.Fla. 2003), *aff'd* 334 F.3d 1246 (11th Cir.2003). The countering of such a motion with an equitable tolling argument does not remove the matter from the ambit of Rule 12(b)(6). *See Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 699 F.Supp. 251, 254 (N.D.Okla.1988).

10. Section 1500 provides, in relevant part: "The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500 (2000).

*telle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court thought it appropriate to allow Mr. Bolduc an additional opportunity to address the question of equitable tolling. Thus, the parties were "requested to provide supplemental briefing on the issue of whether the statute of limitations for filing a claim under 28 U.S.C. § 1495 may have been tolled during the period in which plaintiff's related suit was pending, due to the operation of 28 U.S.C. § 1500." Order (Dec. 19, 2005).

Having reviewed the supplemental briefs, the Court concludes that equitable tolling is not warranted under these circumstances.[11] As an initial matter, it is not clear that the claims in the district court litigation arose from the same operative facts as the claim in this case. The claims in the former, brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, all were based on the prosecution's failure to produce exculpatory evidence before and during plaintiff's criminal trial. *See Bolduc II,* 402 F.3d at 54; *see also* Compl. ¶¶ 1, 16–18, 31–32, *Bolduc v. United States,* No. 01–11376, 2001 WL 34851385 (D.Mass. Aug. 9, 2001). While no facts of this sort need be proven here, they still have, one supposes, some bearing on one element of a claim for unjust conviction and imprisonment—as an individual's failure to receive exculpatory evidence would tend to support his argument that "he did not by misconduct or neglect cause or bring about his own prosecution." 28 U.S.C. § 2513(a)(2). On the other hand, the order setting aside Mr. Bolduc's conviction makes no mention of the withholding of exculpatory evidence. *See* Compl. Ex. B. But considering that the government's position is that it

"agree[s]" that the lawsuit here "likely would have been subject to dismissal pursuant to" section 1500, due to the pendency of the other lawsuit, Def.'s Suppl. Br. at 1; and consistent with the practice of construing factual allegations favorably to the plaintiff, the Court will assume that the claims in both cases arose from the same operative facts.[12]

The operation of section 1500 to bar our Court's jurisdiction, however, does not amount to "some extraordinary circumstance [that] stood in [Mr. Bolduc's] way." *Pace,* 544 U.S. at 418, 125 S.Ct. 1807. There were still three specific intervals of time in which plaintiff could have filed his complaint in this Court, free from the bar of section 1500. First, Mr. Bolduc had over two years in which he could have filed his claim with our Court—from the time it accrued on June 11, 1999, once the order issued setting aside his federal conviction, up to and including August 8, 2001, the day before he filed suit in district court. Second, Mr. Bolduc could have filed a claim here in the weeks between July 8, 2003 and August 1, 2003—the time between the entry of judgment in the district court and the plaintiff's filing of the notice of appeal to the First Circuit. *See Young v. United States,* 60 Fed.Cl. 418, 424 (2004) (holding that claims dismissed by the district court but not yet appealed were not "pending" for purposes of section 1500). Finally, Mr. Bolduc could have filed his claim in our Court during the eleven weeks after March 23, 2005—when the First Circuit entered judgment on his appeal—up to and including June 11, 2005, the six-year anniversary of the court order setting aside his conviction. Thus, the Court is not presented with a situation in which the statute of limitations period expired during the pendency of relat-

11. The Court, however, rejects the government's argument that equitable tolling cannot apply "because Mr. Bolduc's claims are not analogous to claims against private parties, since only the state must defend against claims regarding mistaken conviction." Def.'s Suppl. Br. at 3 n. 2. As the Supreme Court has explained, "it is hardly clear that *Irwin* demands a precise private analogue," and *"Irwin's* reasoning would be diminished were it instructive only in situations with a readily identifiable private-litigation equivalent." *Scarborough,* 541 U.S. at 422, 124 S.Ct. 1856.

12. The Federal Circuit appears to treat the "same operative facts" issue as a question of law, in the context of applying .section 1500, with no deference to the trial court determination. *See, e.g., Harbuck v. United States,* 378 F.3d 1324, 1328–29 (Fed.Cir.2004) (conducting independent review of the facts). In either event, the "same operative facts" issue has been conceded by the government. *See* Def.'s Suppl. Br. at 1.

ed litigation in another court. *Cf. George F. Miller Farms, Ltd. v. United States,* 27 Fed. Cl. 672, 673 (1993) (explaining that limitations period apparently ran during pendency of other lawsuits). Not only could he have filed his claim prior to commencing the district court litigation, but he had ample opportunity to file the claim even after the district court case began.

Nor is the Court presented with a situation in which a plaintiff "actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453. Unlike the plaintiff in *Miller Farms,* Mr. Bolduc did not file a claim in our Court while the section 1500 bar applied but prior to the expiration of the statute of limitations period. *Cf. Miller Farms,* 27 Fed.Cl. at 674 (holding that timely filing of claim dismissed due to section 1500 "tolls the running of the limitations period"). And while the complaint filed in the district court contained claims arising from the same operative facts, it did not contain the claim he seeks to bring here. *Cf. Herb v. Pitcairn,* 325 U.S. 77, 78–79, 65 S.Ct. 954, 89 L.Ed. 1483 (1945) (holding an action is commenced for time limitations purposes when filed in court with no jurisdiction over the matter but with the power to transfer to an appropriate court); *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 434–35, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (holding limitations period is tolled while lawsuit is pending in court that is not proper venue). Had he included a claim in that case for unjust conviction and imprisonment damages, under sections 1495 and 2513, it could not have been transferred to our Court due to section 1500, *see United States v. County of Cook, Illinois,* 170 F.3d 1084, 1091 (Fed.Cir.1999) (holding that trans-

ferred claims are deemed filed simultaneously with the claims remaining with the district court, and are thus barred by section 1500), but might still have constituted a defective pleading for equitable tolling purposes.

The Court also notes that Mr. Bolduc was represented by counsel in the district court litigation. *See Bolduc I,* 265 F.Supp.2d at 153; *see also* Compl., *Bolduc v. United States,* No. 01–11376 (D.Mass. Aug. 9, 2001). Had he been proceeding in that matter *pro se,* then the possibility would have existed that his complaint there, "liberally construed" under *Estelle,* 429 U.S. at 106, 97 S.Ct. 285, could be found to include the unjust conviction and imprisonment claim, pled in the wrong court. But that argument is not available to him.[13]

Finally, Mr. Bolduc has alleged no facts suggesting that he "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453. Moreover, it appears that plaintiff was aware of the existence of the unjust conviction and imprisonment statute at least as far back as October, 1999, as the Wisconsin district court order granting his request noted that he had "applied for a certificate of innocence *pursuant to 28 U.S.C. § 2513.*" Compl. Ex. C–1 (Oct. 7, 1999 order) (emphasis added). Yet despite this knowledge of a statute within our Court's sole jurisdiction, Mr. Bolduc did not file a claim in our Court until June 17, 2005, which was, unfortunately, six days too late.

Admittedly, this may seem to be a harsh result—particularly when the substantive statute itself contains no limits on how far back in time damages may extend, and thus may be viewed as indifferent to the problems

---

**13.** Similarly, Mr. Bolduc's argument that the Court should consider the matter constructively transferred from the district court, *see* Pl.'s Suppl. Br. at 5–6, is unavailing. A statute does allow a federal court lacking jurisdiction over a claim to transfer the claim "to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631 (2000); *see Harbuck,* 378 F.3d at 1328. But the claims Mr. Bolduc brought against the United States in the district court were tort claims, which are not within our jurisdiction. *See* 28 U.S.C. § 1491(a) (2000) (extending jurisdiction over "cases not sounding in tort"). Thus, transfer was not an option. Again, under the leniency provided *pro se* litigants, had Mr. Bolduc represented himself in the district court, a better case for constructive transfer could be made. *Cf. Henke v. United States,* 60 F.3d 795, 800–01 (Fed.Cir.1995) (discussing tolling and constructive transfer in *pro se* context, and finding government's response to be "not very persuasive"). But the case brought on Mr. Bolduc's behalf in the district court did not contain claims that could be construed as coming under sections 1495 and 2513. *See Bolduc II,* 402 F.3d at 54.

of stale evidence, fading memories, and the like. *See* 28 U.S.C. §§ 1495, 2513. But rather than enacting a special, longer period of time in which claimants may file, Congress chose to place these claims under the general six-year limitations period governing claims within our jurisdiction. Federal courts, the Supreme Court has noted, will toll a statute of limitations period for equitable reasons "only sparingly," *Irwin,* 498 U.S. at 96, 111 S.Ct. 453, and Mr. Bolduc has not alleged facts that would place his case under any one of the recognized justifications for equitable tolling.

### III. CONCLUSION

Plaintiff has filed his claim in our Court six days after the statute of limitations period had expired, and has thus failed to state a claim upon which relief can be granted. For the foregoing reasons, defendant's motion to dismiss is hereby **GRANTED.** The Clerk is directed to enter judgment in favor of the United States.

**IT IS SO ORDERED.**